UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MONTE LEE BURCH,

Petitioner,

v.

TIM GARRETT,[1] *et al.*,

Respondents.

Case No. 2:17-cv-00656-MMD-VCF

ORDER

## I. SUMMARY

Petitioner Monte Lee Burch, who is serving 110 years to life in prison after a jury found him guilty of six counts of sexual assault with a minor under the age of 14, lewdness with a minor under the age of 14, and attempted sexual assault with a minor under the age of 14, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF Nos. 19, 35-39.) This matter is before the Court for adjudication of the merits of the remaining[2] grounds in Burch's amended petition ("Petition"), which allege that the state district court improperly admitted the victim's statement and DNA analysis evidence, and his counsel failed to object to the DNA analysis evidence on Confrontation Clause grounds, object to the prosecution's lack of notice regarding the introduction of the victim's statement, and adequately cross-examine the victim's mother. (ECF No. 19.) For the reasons discussed below, this Court denies the Petition and a Certificate of Appealability.

[1]The Nevada corrections department's inmate locator page states that Burch is incarcerated at Lovelock Correctional Center. Tim Garrett is the current warden for that facility. At the end of this order, the Court directs the Clerk to substitute Tim Garrett as a Respondent for the prior Respondent Renee Baker. *See* Fed. R. Civ. P. 25(d).

[2]This Court previously dismissed grounds 3, 4, 5, 6(c), 8, 9, and 10. (ECF Nos. 52, 55.) There is no ground 7 presented in Burch's amended petition. (ECF Nos. 19, 72 at 61 n.7.)

## II. BACKGROUND[3]

Shawna Rodriguez, the mother of nine-year-old R.R., eight-year-old P.R., and two-year-old T.B.,[4] testified that she and her ex-boyfriend, Burch, started dating around 2005. (ECF No. 35-33 at 5-6.) Rodriguez testified that she, R.R., P.R., and Burch lived in an apartment "off of Flamingo and Mountain Vista" in Clark County, Nevada from the summer of 2006 until January 2007. (*Id.* at 6.) And in January 2007, while Rodriguez was pregnant with Burch's son, T.B., Rodriguez, R.R., P.R., and Burch moved to a different apartment "off of Flamingo and Cabana." (*Id.*)

On July 16, 2008, while R.R. and T.B. were in daycare, Rodriguez testified Burch and P.R., who wanted to run errands with Burch instead of going to daycare, dropped her off at school in the early afternoon. (*Id.* at 8.) Burch took P.R. swimming before picking Rodriguez up from school that evening. (*Id.*) Burch had been drinking and driving with P.R. in the vehicle, causing a fight between Burch and Rodriguez. (*Id.*) Later that evening after Rodriguez asked Burch to leave the residence, Rodriguez found a lotion bottle on her bed, which was unusual "because [she] used it that morning in the bathroom." (*Id.* at 7.) Rodriguez asked R.R. and P.R. "who had the lotion in [the] bed," and P.R. said "[s]he and [Burch] had used it . . . to get the ash off [her] skin." (*Id.*)

P.R. was acting strange during this conversation, and after some prodding by Rodriguez, P.R. told Rodriguez what had occurred between herself and Burch, including "demonstrat[ing] some things for [Rodriguez]" and showing Rodriguez the location of a pornographic video that she viewed with Burch. (*Id.* at 7, 10, 16.) Rodriguez called the police the following morning and, after speaking with detectives, took P.R. to the hospital for a sexual assault examination. (*Id.* at 8, 11.) Dr. Theresa Vergara conducted that

---

[3]This Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify this Court overlooked it in considering Burch's claims.

[4]This Court only refers to children by their initials. *See* LR IC 6-1(a)(2).

examination and observed "a petechial lesion" inside the lower half of P.R.'s vaginal opening, which was indicative of possible trauma and abuse. (ECF No. 35-34 at 22, 24–25, 29.) Dr. Vergara obtained swabs from P.R.'s vaginal area, rectum, and mouth. (*Id.* at 26.)

P.R. testified that while she was naked, Burch touched her between her legs with "a part of his body that's between his legs." (ECF No. 35-33 at 18, 21.) P.R. also testified that on another occasion, while living in their previous apartment, Burch touched her in "the part [she] go[es] to the bathroom with." (*Id.* at 22-23.) Following her testimony, outside the presence of the jury, the state district court noted that P.R. had difficultly answering the questions—"[s]he clearly withdrew, wadded herself up into a ball or curled around her stuff animal and did not really wish to answer." (*Id.* at 32-33.)

Detective Patricia Heldt of the Las Vegas Metropolitan Police Department testified that she interviewed P.R. on July 17, 2008. (ECF No. 35-33 at 37-38.) During the first portion of that interview, P.R. did not want to discuss any kind of sexual abuse, stating she was embarrassed. (ECF No. 35-34 at 11.) However, about halfway into the interview, P.R. stated that she saw Burch's "wiener" and that Burch put lotion on his penis and "tried to stick his wiener in her pee-pee but it wouldn't work." (*Id.* at 14-15, 17, 19.) P.R. told Detective Heldt that Burch "shooted (sic) sperm out of" his penis and "when asked where the sperm went[,] she . . . sa[id] inside [her] pee-pee." (*Id.* at 17, 19.) At the end of the encounter, Burch gave P.R. a purple "wash rag" to clean up. (*Id.* at 17.) Burch also showed P.R. two scenes from a pornographic video and told P.R. that "if she ever told anybody about this[,] he would spank her." (*Id.* at 18.) P.R. also told Detective Heldt about another occasion, which took place in her previous apartment, in which Burch instructed her to lay on a bed naked, touched her "pee-pee and [her] butt" with his fingers, and kissed her buttocks. (*Id.* at 19.)[5]

---

[5]In addition to Detective Heldt testifying about the statements P.R. made to her during her interview, an audio recording of the interview was played for the jury. (ECF No. 35-34 at 4.) In that audio recording, P.R. made, *inter alia*, the following statements about the incidents that took place on July 16, 2008: (1) Burch tried to put his "wiener" in her

Detective Heldt directed a crime scene analyst to collect bed sheets and purple underwear from the residence. (ECF No. 35-33 at 40.) Following Burch's arrest, Detective Heldt "served a search warrant to collect [Burch's] inner cheek scrapings for a buccal swab." (*Id.* at 41.) Kimberly Murga, the DNA lab manager with the Las Vegas Metropolitan Police Department, testified that Craig King, a former DNA examiner, obtained DNA results from P.R.'s vaginal swabs, rectal swab, blue underwear worn to the hospital for her examination, and purple underwear collected from her residence. (ECF No. 35-34 at 31-32.) Burch's sperm was found in P.R.'s first vaginal swab, the crotch of the blue underwear, and "all over" the purple underwear; further, Burch's DNA could not be excluded as the sperm contributor in P.R.'s rectal swab and second vaginal swab. (*Id.* at 35-38.)

A jury found Burch guilty of six counts of sexual assault with a minor under the age of 14, lewdness with a minor under the age of 14, and attempted sexual assault with a minor under the age of 14. (ECF No. 35-35.) The Nevada Supreme Court affirmed Burch's judgment of conviction, and the Nevada Court of Appeals affirmed the denial of Burch's state postconviction petition. (ECF Nos. 35-40, 37-26.)

## III. LEGAL STANDARD

Title 28 of United States Code section 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

"pee pee" but "it was too big," (2) Burch "put lotion on [his wiener] and tried to make it slippery" and "tried to stick [it] in [her] pee pee again but it wouldn't work still," (3) Burch touched her "pee pee" with his tongue, (4) Burch put his fingers in her "pee pee" three times, (5) Burch "shooted [sic] sperm out of [his wiener]" onto her "pee pee" after "movin' [sic] [his hand] back and forth" on his "wiener," (6) Burch "tried to make [her] eat [the sperm]," and (7) Burch "tried to make [her] suck on" his "wiener." (ECF No. 20-1 at 47-49, 51-52, 55-56, 58.) Moreover, in that audio recording, P.R. made, *inter alia*, the following statements about incidents that took place on an earlier occasion: (1) Burch touched her "pee pee" with "[h]is wiener, his tongue and his fingers," and (2) Burch kissed her butt cheeks. (*Id.* at 67-68.)

> to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as

a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV. DISCUSSION

### A. Ground 1—admission of P.R.'s statement

In ground 1, Burch alleges that the state district court admitted P.R.'s statement into evidence in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 19 at 10.) Specifically, Burch argues that because the prosecution did not seek to introduce P.R.'s statement until after she had already testified and declined to ask P.R. during direct examination about the specific accusations she made in that statement, he did not have a full and fair opportunity to cross-examine her about her statement. (ECF No. 72 at 15-16, 24.)

#### 1. Background information

During a break in jury selection, the prosecution notified the state district court of the following:

> The child in this case, [P.R.] is eight years old, and as with any child I have no idea when she comes in here if she's going to talk or not. It is possible that she'll just ramble on about the conduct alleged in the information. It's possible she'll curl up in a ball and say nothing.
>
> If she curls up in a ball and says nothing, it would be my intent pursuant to 51.385 to bring in her statement through the detective. And the more I thought about it, my hope would be if I have to go that way to play her taped statement.
>
> I did talk to [defense counsel] about that before the Court - - before you got on the bench . . . .
>
> I do expect that [defense counsel] will object, but pursuant to 51.385 she is under 10. And I think that if the detective testified for five minutes outside the presence of the jury, the Court could pursuant to that statute make the findings of trustworthiness and whatnot.

(ECF No. 35-32 at 4.) Defense counsel clarified that his objection "would be a *Crawford* violation, a violation of [Burch's] right to confront his accuser." (*Id.*)

As noted previously, after P.R.'s testimony, the state district court stated for the record, outside the presence of the jury, that P.R. had difficulty answering questions and

"clearly withdrew." (ECF No. 35-33 at 32-33.) Considering P.R.'s testimony, the prosecution indicated that it wanted to offer P.R.'s statements to Detective Heldt pursuant to NRS § 51.385[6] by playing an audio recording of the interview for the jury. (*Id.* at 34.) Later that day, after the jury had been excused, the prosecution made a proffer of the proposed testimony. (*Id.* at 44.) Detective Heldt testified at that hearing about the circumstances and content of her interview with P.R. (*Id.* at 44-48.) After considering the trustworthiness of P.R.'s statements pursuant to the factors outlined in NRS § 51.385(2), the state district court allowed the admission of the audio recording of the interview. (*Id.* at 51.) The next morning, during the continuance of Detective Heldt's trial testimony, the hour-long audio recording of P.R.'s interview was played for the jury. (ECF No. 35-34 at 4.)

**2. Confrontation Clause standards**

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); *see also Maryland v. Craig*, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."); *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."); *Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the

[6]NRS § 51.385(1) provides, in relevant part, that "a statement made by a child under the age of 10 years describing any act of sexual conduct performed with or on the child . . . is admissible in a criminal proceeding" if the state district "court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness."

principal means by which the believability of a witness and the truth of his testimony are tested.").

While "the Confrontation Clause guarantees an opportunity for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted); *see also Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) ("[T]he Confrontation Clause's functional purpose i[s] ensuring a defendant an opportunity for cross-examination."). Regarding out-of-court statements admitted at trial, as is relevant here, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

**3. State court determination**

In affirming Burch's judgment of conviction, the Nevada Supreme Court held:

> First, appellant Monty Lee Burch argues that the State's use of the victim's unsworn police statement violated his confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004), and NRS 51.385 and allowed his conviction to be sustained by an unsworn statement.
>
> > [FN1] Burch also contends that the admission of the victim's unsworn police statement violated article 1, § 10 of the United States Constitution. However, he did not object to the evidence on that basis below and therefore his claim is not preserved for appellate review. *See Pantano v. State*, 122 Nev. 782, 795, 138 P.3d 477, 485 (2006).
>
> As to Burch's *Crawford* claim, that case does not apply as the victim testified at trial and was subject to cross-examination. *Crawford*, 541 U.S. at 68-69 (precluding admission of testimonial hearsay statements of unavailable declarant unless defendant had prior opportunity to cross-examine); *see Walters v. McCormick*, 122 F.3d 1172, 1175 (9th Cir. 1997) ("When a witness gives 'testimony that is marred by forgetfulness, confusion, or evasion . . . the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose those infirmities through cross-examination'" (quoting *Delaware v. Fenterer*, 474 U.S. 15, 22 (1985))); *see Pantano v. State*, 122 Nev. 782, 787-91, 138

> P.3d 477, 480-83 (2006) (applying *Crawford* under similar factual circumstances).

(ECF No. 36-14 at 2-3.)

**4. Analysis**

Burch's argument that his cross-examination of P.R. on her statement, which was not admitted until later in the trial, was ineffective because the prosecution's direct examination of P.R. regarding her statement was limited, is belied by the record. Although the prosecution was unable to ask P.R. leading questions about specific accusations P.R. made to Detective Heldt during her interview, the prosecution asked P.R., *inter alia*, if she spoke to a detective one day, if she told the detective "why we're here today," if she told the detective "stuff" about Burch, if she remembered telling the detective what Burch did, what she told the detective, and if she told the detective about the incident that occurred at her previous apartment. (ECF No. 35-33 at 20-21, 23.)

As such, on this record, Burch fails to support his argument that he was denied an opportunity for a full, fair, and effective cross-examination of P.R. relating to her statement before it was admitted. Therefore, the Nevada Supreme Court's determination that the Confrontation Clause was not implicated because P.R. testified at Burch's trial and Burch had an opportunity to effectively cross-examine her, constitutes an objectively reasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. *See Crawford*, 541 U.S. at 60 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Burch is therefore not entitled to federal habeas relief for ground 1.

///

///

///

**B. Ground 6—effective assistance of trial counsel**

In ground 6, Burch alleges three-remaining sub-grounds—6(a), 6(b), and 6(d)—that his trial counsel provided ineffective assistance in violation of his rights under the Sixth and Fourteenth Amendments. (ECF No. 19 at 22.)

**1. Standard for effective assistance of counsel**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

**2. Procedural default**

Burch previously acknowledged that grounds 6(a), 6(b), and 6(d) are unexhausted, but he contends that they should be considered technically exhausted and that he can demonstrate cause to excuse the procedural default pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). (ECF No. 52 at 10.) This Court deferred consideration of this contention until this time. (*Id.* at 12.)

The principal issues before the Court, in context,[7] are: (1) whether Burch's underlying ineffective-assistance-of-counsel claims are substantial; (2) if so, whether Burch's state post-conviction counsel was ineffective in raising these claims in the state district court; and (3) if so, whether, on the merits, Burch was denied effective assistance of counsel. *See, e.g., Atwood v. Ryan*, 870 F.3d 1033, 1059-60 (9th Cir. 2017); *Detrich v. Ryan*, 740 F.3d 1237, 1243-46 (9th Cir. 2013). On all such issues, this Court's review is de novo. *See Ramirez v. Ryan*, 937 F.3d 1230, 1243 (9th Cir. 2019); *Atwood*, 870 F.3d at 1060 n.22.

**3. Ground 6(a)—objection to Murga's testimony**

In ground 6(a), Burch alleges that counsel failed to object to Murga's testimony on Confrontational Clause grounds. (ECF No. 19 at 23.) Burch's allegation is based on the prosecution calling Murga, rather than the forensic scientist who performed the DNA testing, to testify about the forensic scientist's report. (*Id.* at 13.)

**a. Background information**

Murga testified that, as "the DNA lab manager," she was responsible for "oversee[ing] all of the operations in the DNA lab," including supervising personnel and conducting "scientific oversights." (ECF No. 35-34 at 31.) Murga explained that Craig King, who performed the DNA analysis in this case, was no longer employed by the Las Vegas Metropolitan Police Department, indicating that "[h]e actually took a position as a civilian contracting agent . . . in Iraq . . . working in the field as a DNA examiner." (*Id.*) Murga testified that she reviewed King's analysis in this case[8] because "we actually have to have two layers of review on every single DNA case that leaves the lab. And so not only does the person examining the case put the case together, but . . . independent reviews also occur for every case that leaves Metro's lab for DNA." (*Id.* at 32-33.) Murga

[7]This Court does not dwell over the additional, undisputed contextual background requirements. *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

[8]Murga signed the examination report written by King as a "[r]eviewer." (ECF No. 20-3.)

made charts based on King's analysis and discussed those charts during her testimony at Burch's trial. (*Id.* at 34.)

**b. Analysis**

In June 2009, six months before Burch's trial, the Supreme Court held that "analysts' affidavits [are] testimonial statements," so "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (emphasis in original) (internal quotation marks omitted). Importantly, the facts of Burch's case differ from *Melendez-Diaz*, where a lab report was submitted without live testimony. Here Murga, who supervised King, was familiar with the DNA laboratory's procedures, and participated personally in the work that was done by completing an independent review, testified about the DNA analysis, and was subject to cross-examination. Accordingly, there was no reasonable probability that a Confrontation Clause objection would have been sustained by the state district court given the State of Nevada and United States Supreme Court Confrontation Clause jurisprudence at the time of Burch's trial.[9] *See, e.g., Hacheney v. Obenland*, 732 F. App'x 541, 543 (9th Cir. 2018) ("Neither *Crawford* . . . nor *Melendez-Diaz* . . . , the key Supreme Court cases that had been decided when [petitioner's] convictions became final in 2010, addressed" whether "a supervisor could [or could] not testify about reports performed by examiners that he oversaw.").

Moreover, even today, there does not appear to be clearly established federal law that would make the lack of objection to, or admission of, Murga's testimony objectively unreasonable. In June 2011, three months after Burch's direct appeal was decided, the United States Supreme Court held that

[9]During closing arguments, defense counsel stated Murga "reviewed the person who did [the DNA analysis] and then she reviewed his reports. And legally, that's efficient [sic] for her to come in and testify." (ECF No. 35-36 at 11.) Accordingly, Burch's contention that counsel "simply missed this obvious issue" (ECF No. 72 at 45) is belied by the record.

> [T]he Confrontation Clause [does not] permit[ ] the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification . . . unless the analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine the particular scientist.

*Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011). Importantly, Justice Sotomayor, who provided the fifth vote for the majority in *Bullcoming*, identified, in her separate opinion, a Confrontation Clause question that remained unanswered—the degree of proximity the testifying witness must have to the scientific test, explaining "this is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." *Id.* at 672 (Sotomayor, J., concurring in part). This open question is relevant to Murga's testimony. Moreover, in *Williams v. Illinois*, five Justices agreed that the admission of expert testimony referring to an out-of-court DNA profile did not violate the Confrontation Clause. 567 U.S. 50, 86 (2012). And as Justice Breyer acknowledged in his concurrence, the Court did not settle how "Confrontation Clause 'testimonial statement' requirements apply to crime laboratory reports." *Id.* at 92 (Breyer, J., concurring).

In sum, Burch fails to demonstrate that there is a reasonable probability that the state district court would have excluded Murga's testimony had counsel objected to it on Confrontation Clause grounds. *See Strickland*, 466 U.S. at 694. Thus, ground 6(a) is not substantial for purposes of *Martinez*, is procedurally defaulted, and is dismissed.

#### c. Procedural default of ground 2

Relatedly, in ground 2, Burch alleges that the state district court admitted hearsay evidence regarding DNA analysis in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 19 at 13.) Burch previously acknowledged that ground 2 was unexhausted and procedurally defaulted. (ECF No. 52 at 10.) However, Burch argued that he could show cause to excuse the procedural default. (*Id.*) This Court previously held that "[i]f Burch can demonstrate cause to excuse the procedural default

of ground six(A), then ground six(A) can [be used] to excuse the procedural default of ground two." (*Id.* at 12.)

Because Burch has not demonstrated cause and prejudice to excuse the procedural default of ground 6(a), as discussed previously, ground 6(a) is not cause to excuse the procedural default of ground 2. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Ground 2 is procedurally defaulted and dismissed.

**4. Ground 6(b)—objection to lack of statement notice**

In ground 6(b), Burch alleges that counsel failed to object to the prosecution's lack of 10-days-written notice regarding its intent to introduce P.R.'s interview statement. (ECF No. 19 at 23.) It is true that "[a] trial counsel's failure to object to evidence which is inadmissible under state law can constitute deficient performance under *Strickland*." *Delgadillo v. Woodford*, 527 F.3d 919, 928 (9th Cir. 2008). However, Burch fails to demonstrate that P.R.'s interview statement was inadmissible under Nevada law due to a lack of notice. NRS § 51.385(3) provides "*[i]f the child is unavailable or unable to testify*, written notice must be given to the defendant at least 10 days before the trial of the prosecution's intention to offer the statement in evidence." (Emphasis added.)

Importantly, P.R. was not unavailable or unable to testify; rather, she testified at Burch's trial. (ECF No. 35-33 at 18.) Accordingly, based on a plain reading of NRS § 51.385(3), the prosecution was not required to give prior written notice of its intent to offer P.R.'s interview statement. *See, e.g., Branagan v. State*, Case No. 65782, 2015 WL 3669934, at *1 (Nev. June 10, 2015) (concluding that the state district court did not err in finding that "notice under NRS 51.385(3) was not required because the victim testified and was subject to cross-examination"). As such, Burch fails to demonstrate that counsel's "representation fell below an objective standard of reasonableness" in not challenging the prosecution's lack of notice. *See Strickland*, 466 U.S. at 688. Ground 6(b) is not substantial for purposes of *Martinez*, is procedurally defaulted, and is dismissed.

///

**5. Ground 6(d)—cross-examination of Rodriguez**

In ground 6(d), Burch alleges that counsel failed to adequately cross-examine Rodriguez. (ECF No. 19 at 24.) Specifically, Burch explains that his defense at trial was that after he and Rodriguez would have sex, he would grab any available clothing near the bed and use it to wipe himself off, explaining that is how his sperm got on P.R.'s underwear, which in turn is how his sperm ended up on P.R.'s vaginal and rectal swabs. (*Id.*) However, Burch contends that counsel failed to ask Rodriguez about this subject. (*Id.* at 25.)

In Burch's interview with police, he "claimed that when he and [Rodriguez] have sex they will pick up whatever piece of clothing or rag they can find to wipe the semen onto therefore, finding his semen on the victim's panties proves nothing." (ECF No. 20-2 at 2.) Police interviewed Rodriguez "to determine whether the details [Burch] provided during his interview were accurate." (*Id.*) Rodriguez "confirmed that [Burch] will often use his own t-shirt or boxers to wipe semen off of himself and [Rodriguez] following sexual intercourse." (*Id.*) When Rodriguez was "asked about [P.R.'s] purple panties[,] . . . she said that her children's clothing is rarely left inside her room." (*Id.*) And when asked "if she could recall if [Burch] ever used or had her use the purple panties to wipe themselves[,] . . . she replied that she could not recall that either one of them had used the panties and that they were too small to use to clean up with." (*Id.*)

Questioning Rodriguez about Burch's practice of using pieces of available clothing to wipe himself off after sex would have been beneficial evidence for Burch's defense if Rodriguez testified consistently with her police interview. However, importantly, questioning Rodriguez in this regard would have prompted the prosecution to seek the following harmful testimony from Rodriguez on redirect—P.R.'s panties were rarely in the room for Burch's use, she could not recall Burch using P.R.'s panties to wipe himself, and P.R.'s panties would have been too small of a piece of clothing for Burch to use for wiping purposes.

Therefore, it was objectively reasonable for counsel to have refrained from introducing this line of questioning with Rodriguez due to its potential to damage his defense. *See Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("[C]ounsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objectively reasonable standards."). Instead, counsel introduced the defense's theory during his cross-examination of Murga, asking her a hypothetical question regarding DNA and Burch's use of the "pair of purple underwear to wipe himself off after sexual activity." (ECF No. 35-34 at 39.) Consequently, Burch fails to demonstrate that counsel's "representation fell below an objective standard of reasonableness" regarding his cross-examination of Rodriguez. *See Strickland*, 466 U.S. at 688. Ground 6(d) is not substantial for purposes of *Martinez*, is procedurally defaulted, and is dismissed.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Burch. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). This Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *See id*.

Applying these standards, this Court finds that a COA is unwarranted.[10]

[10]Burch requests that this Court conduct an evidentiary hearing. (ECF No. 19 at 28.) Burch's request is denied because neither further factual development nor any

## VI. CONCLUSION

It is therefore ordered that the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 19) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to substitute Tim Garrett for Respondent Renee Baker, to enter judgment accordingly, and to close this case.

DATED THIS 22nd Day of March 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

evidence that may be proffered at an evidentiary hearing would entitle Burch to relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).